IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JASMINE CORDELIA SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-86-RAH |
| | ) | |
| CITY OF DOTHAN, ALABAMA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

"Oh, What A Tangled Web We Weave; When First We Practice To Deceive,"[1] at least so say the Defendants in this case.  Plaintiff Jasmine Cordelia Smith ("Plaintiff" or "Smith") claims there was no deceit, nor any criminal conduct worthy of the charges that were filed against her and lie at the heart of this case.  The tangled web presented here, however, was highly suspicious at best, and criminal at worst.  But for summary judgment purposes, the conduct at issue, at a minimum, provided sufficient arguable probable cause that a crime had been committed, thereby serving as a roadblock to Smith's claims going any further in this case.

On January 28, 2019, Smith filed a seven-count complaint alleging that the City of Dothan, Alabama ("the City"), its Chief of Police, Steve Parrish ("Chief Parrish"), Detective Terry Nelson ("Detective Nelson") (collectively, the "City

---

[1] From Sir Walter Scott's epic poem, *Marmion, A Tale of Flodden Field*.  Canto VII, Stanza 17.

Defendants"), and Acceptance Loan Company, Inc. ("Acceptance"), had wrongfully arrested Smith, defamed her, violated her constitutional rights, and acted negligently toward her in connection with a criminal theft of property charge filed by Detective Nelson concerning a 1997 Chevrolet Geo ("Geo").

Counts 1 through 4 of the Complaint are directed against the City Defendants. Count One alleges that Smith was unlawfully arrested and seized without probable cause by Detective Nelson in violation of the Fourth Amendment; Count Two alleges that Chief Parrish negligently supervised Detective Nelson, thereby leading to a violation of the Fourth Amendment; Count Three alleges that Detective Nelson, with the assistance of Chief Parrish and the City, maliciously prosecuted Smith for theft in violation of the Fourth Amendment; and Count Four alleges state law malicious prosecution.

Counts Five through Seven are directed against Acceptance, a private business entity, and generally allege that Acceptance slandered (Count Five), libeled (Count Six), and acted negligently toward Smith (Count Seven) by falsely representing to the City Defendants that Smith, through forgery, had wrongfully removed Acceptance's lien from the certificate of title to the Geo.

This matter comes before the Court on two separate motions for summary judgment: one filed by the City Defendants, (Doc. 46), and one filed by Acceptance, (Doc. 37).  Upon consideration, the motions are due to be GRANTED as to all

2

counts.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  *See also* Fed. R. Civ. P. 56(a). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.  Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A), (B).

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

## BACKGROUND

Smith's Complaint vaguely alleges only a few facts. On March 9, 2017, Smith claims Detective Nelson, without probable cause, signed a criminal complaint charging Smith with theft of property (in particular, $2,273.81 in U.S. currency), caused the local magistrate to issue an arrest warrant that later was dismissed for "no probable cause," and caused Smith to lose her job with the Cobb County Board of Education. (Doc. 1 at 3-4.) Unsurprisingly, the Complaint is totally devoid of the facts leading up to the criminal charge filed by Detective Nelson.  As a result, the pertinent facts, for summary judgment purposes, are taken from the record evidence, which Smith largely does not dispute and glaringly chooses to ignore.

On July 18, 2006, Smith entered into a title loan, with a 36-month repayment plan, with Acceptance in Dothan, Alabama and expressly granted Acceptance a security interest in her Geo. (*See* Docs. 38-5; 47 at 1.)  On August 22, 2006, the Alabama Department of Revenue (ADOR) issued a new certificate of title for the

Geo that listed Smith as the owner and Acceptance as the lienholder. (Docs. 38-5 at 30; 47 at 1; 47-18 at 1.) Acceptance was to retain possession of the certificate until such time as Smith paid off the loan.  Smith, however, never fully repaid the loan. (Doc. 47 at 2.)

The next year, 2007, Smith moved to Georgia, where she would remain until 2015. (*See id.*)  Although she resided in Georgia, between 2010 and 2015, Smith registered the Geo with the local tag office in Houston County, Alabama and identified her residence address as 1005 Eugene St., Dothan, Alabama.  (*Id.*; Doc. 47-25 at 1-6.)

On August 2, 2016, the ADOR received an application for a replacement title for the Geo purportedly signed by Smith. (*See* Docs. 47 at 2; 47-26 at 2-3.)  The application listed Smith as the owner of the Geo and gave a different address in Dothan, but represented that there was no lienholder. (Doc. 47-26 at 2-3.) The application bore Smith's purported signature and was signed under the representation that the information contained in it was true and correct and that any false statement made with an intent to defraud was a felony under Alabama law. (Doc. 47-26 at 3.)

In reliance upon the information contained in the signed application, the ADOR issued a replacement certificate of title showing Smith as the owner of the Geo with no lienholder. (Docs. 47 at 2; 47-10 at 1.)

Six weeks later, on September 22, 2016, Thomas Holston, Smith's boyfriend, submitted an application for a new title for the Geo at the tag office in Houston County, Alabama. (*See* Doc. 47 at 3.)  Holston presented a bill of sale and endorsed certificate of title, both of which bore Smith's purported signature.  (*See* Docs. 47-7 at 3; 47-10 at 2; 47-11.)   In reliance on the transactional documents provided by Holston, the ADOR issued a new title showing Holston as the owner of the Geo. (*See* Docs. 47 at 3; 47-12.)

Four days later, on September 26, 2016, Smith attempted to renew the tag for the Geo at the tag office in Houston County, Alabama. (*See* Doc. 47-30 at 8.)  There, Smith was told that someone already had obtained the tag for the Geo.  (*See id*.) After requesting the documentation, Smith was provided a copy of the bill of sale and title that showed Smith's purported signatures and her conveyance of the Geo to Holston. (*See id*.)  Claiming that Holston was her *ex-boyfriend*, the documentation fraudulent, and her signature thereon a forgery, Smith reported Holston to the Dothan City Police Department for fraud. (*See id*.)

Detective Terry Nelson was assigned the case.  (*See* Doc. 47 at 6.)  Among other activities, Detective Nelson spoke with Smith, who stated that she wanted to press charges against Holston, whom she characterized as her "ex-boyfriend." (*See* Doc. 47-30 at 8.)   Smith also told Nelson that Acceptance had possession of the

actual certificate of title for the Geo because the Geo was collateral for a loan with Acceptance. (*See id.*)

Several months later, despite calling Holston an ex-boyfriend who had committed fraud and forgery at her expense, Smith entered a TitleMax store in Austell, Georgia with Holston by her side.  (*See* Doc. 47-16 at 1.)  There, in Smith's presence, Holston took out a loan from TitleMax and pledged the now-unencumbered Geo as security using the certificate of title and purported conveyance that Smith previously had reported to the Dothan authorities as fraudulent.  (*See* Doc. 47-15 at 1.)  As a part of that transaction, Smith received $50 from TitleMax for referring Holston to TitleMax.  (*See* Doc. 47-7 at 1.)

During the course of his investigation, Detective Nelson learned of the title pawn involving TitleMax in Georgia.  During a phone call to TitleMax on March 6, 2017, Detective Nelson spoke with a TitleMax representative who told him that she had personally observed Holston and Smith enter the TitleMax store together on December 14, 2016, that Holston in Smith's presence pawned the title to the Geo, and that Smith had received a $50 referral fee as part of the transaction.  (*See* 47-16 at 1.)  The representative also confirmed Smith's identity through a photograph that Detective Nelson sent her and confirmed that Smith even made a loan payment to TitleMax on behalf of Holston. (*See id.*)

That same day, Detective Nelson called Acceptance about Smith and the Geo. During the call, an Acceptance representative confirmed that Acceptance still had in its possession the original certificate of title to the Geo and that Smith still owed $2,273.81 on the loan. (*See* Docs. 47-18; 47-19.)

After these conversations, Detective Nelson issued a subpoena to TitleMax in Georgia for documents associated with the Holston title pawn. In response, TitleMax provided a copy of the $50 check to Smith, a copy of Smith's driver's license, a copy of the pawn agreement between TitleMax and Holston, and a copy of the payment receipt. (*See* Docs. 47-15; 47-16.) Reviewing these documents, Nelson also observed that Holston and Smith both listed the same residence address in Austell, Georgia. (*See* Doc. 47-15 at 1.)

Satisfied that Smith and Holston had been knowing parties to a crime, Detective Nelson signed and filed theft warrants against Smith and Holston in Houston County on March 9, 2017. (Doc. 47-30 at 9.) Finding probable cause, the local magistrate issued a warrant for Smith's arrest for Theft of Property, 2nd Degree. (Docs. 47-20; 47-21.) This warrant was later dismissed for "no probable cause" by the presiding district judge on June 2, 2017 after a preliminary hearing. (Doc. 47-31.)

Smith filed this civil lawsuit on January 28, 2019. (*See* Doc. 1.)

## **DISCUSSION**

The Court begins, as the Complaint does, with the allegations against the City Defendants.  The core of Smith's first four counts is that, given the evidence and the ultimate dismissal of the criminal theft charge against her for "no probable cause," the City Defendants violated her constitutional rights under the Fourth Amendment when they filed, without probable cause, a criminal theft complaint against her. (Doc. 1 at 1, 4, 6, 8, 9.)  The next three counts, asserted against Acceptance, share a similar theme; that Acceptance falsely accused Smith of fraudulently, and through forgery, "delet[ing] Acceptance's name as lien holders on the title to Plaintiff's vehicle." (Doc. 1 at 11, 12, 13.)  Because Detective Nelson had arguable probable cause and because Smith has adduced nothing to show that Acceptance ever accused her of forgery, the Defendants are entitled to summary judgment on all counts in the Complaint.

### 1.  **Detective Nelson Had Arguable Probable Cause.**

Of the many arguments for summary judgment raised by the City Defendants,[2] the primary one is that Detective Nelson had probable cause, both actual and arguable, to arrest Smith.  Therefore, according to the City Defendants, because they

---

[2] Because Smith has sued the City, her official capacity claims against Detective Nelson and Parrish are duplicative and therefore due to be dismissed. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

9

had probable cause, they could not have violated the Fourth Amendment or any other constitutional right that Smith may have had.  Based on the facts and argument presented, the Court concludes that the underlying actions of the law enforcement officers are immunized by the existence of *arguable* probable cause.[3]

### a. Claims of Unlawful Seizure and Negligent Supervision are defeated by the lack of an underlying constitutional harm.

To establish municipal liability against a city, the officer through whom a claim is vicariously asserted must commit an underlying constitutional harm.  *See City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986).  To establish a constitutional harm and thereby abrogate the shield of qualified immunity, which applies to each of the first three counts of the Complaint, Smith must show that Detective Nelson did not have, at a minimum, *arguable* probable cause to arrest her.  *See Brown v. City of Huntsville*, 608 F.3d, 724, 735 (11th Cir. 2010); *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003).  An arrest made without probable cause violates the Fourth Amendment.  *See Skop v. City of Atlanta, Ga.,* 485 F.3d 1130, 1137 (11th Cir. 2007).

### i. The Arguable Probable Cause Standard.

---

[3] Because the Court is concluding that arguable probable cause existed, the Court pretermits discussion of whether actual probable cause existed.

"Probable cause exists when the facts and circumstances, of which the official has reasonably trustworthy information, would cause a prudent person to believe that the suspect has committed, is committing, or is about to commit an offense." *Elmore*, 605 F. App'x 906, 911 (11th Cir. 2015). As long as the circumstances known to the arresting official, when viewed objectively, can "give probable cause to arrest *for any crime*, the arrest is constitutionally valid even if probable cause was lacking as to some offenses, or even all announced charges." *Id.* at 914 (citing *Devenpeck v. Alford*, 543 U.S. 146, 153–55 (2004)) (emphasis added).

The law does not "automatically hold an [official] liable for making an arrest that, when seen with the benefit of hindsight, turns out not to have been supported by probable cause." *Skop*, 485 F.3d at 1137. Because officials will, in some cases, "reasonably but mistakenly conclude that probable cause is present," the law does not hold those officials personally liable for their mistaken judgment. *Id.* (quoting *Anderson*, 483 U.S. at 641).

Under this principle, the Eleventh Circuit has clarified that officers are entitled to qualified immunity even if they did not have probable cause to arrest as long as they had *arguable* probable cause, which exists if "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant *could have believed* that probable cause existed to arrest." *Gonzalez v. Butts County, GA.*, 522 F.App'x 742, 746 (11th Cir. 2013)(quoting *Skop*, 485 F.3d at 1137). Arguable

11

probable cause encompasses any situation where an officer reasonably could have believed that probable cause existed in light of the information he possessed. *See Wood v. Kesler*, 323 F. 3d 872, 881–882 (11th Cir. 2003).

Notably, the "validity of an arrest does not turn on the offense announced by the offic[ial] at the time of the arrest." *Gonzalez v. Butts Cty.*, 522 F. App'x 742, 746 (11th Cir. 2013) (quoting *Bailey v. Bd. of Cty. Comm'rs of Alachua Cty.*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992)). If the arresting official had arguable probable cause to arrest for *any* offense, qualified immunity will still protect the official. *Croland*, 782 F. App'x 753, 757 (11th Cir. 2019). However, "a constitutional arrest must be based on a reasonable belief that a crime has occurred, rather than simply unwanted conduct." *Id.* (quoting *Wilkerson v. Seymour*, 736 F.3d 974, 978 (11th Cir. 2013)).

The question then is whether Detective Nelson could have reasonably believed that a crime had occurred given the facts available and made known to him.

> ii.     <u>Smith's Own Undisputed Actions Were Sufficient to Create Arguable Probable Cause.</u>

Smith argues that the City Defendants lacked probable cause to arrest her for theft of property, second degree, *see* Ala. Code §13A-8-4, a charge that was subsequently dismissed by a state court judge for "no probable cause." (Doc. 47-31.) The Court need not decide whether probable cause existed to file the theft of property

charge because the facts presented show that the City Defendants possessed arguable probable cause.[4]

In their summary judgment motion, the City Defendants argue that Detective Nelson, aside from having actual probable cause for the theft of property charge that he did file, also had arguable probable cause for other criminal offenses, such as Alabama Code § 32-8-11 (aiding and abetting a violation of § 32-8-12 and § 32-8-13).  Under Alabama Code § 32-8-11, a person is guilty of aiding and abetting a violation of § 32-8-12, which makes it a felony for someone who, with fraudulent intent, alters or forges a certificate of title, or an assignment or release of a security interest, on a certificate of title or a form the department prescribes.  *See, e.g., Lucas v. State*, 406 So. 2d 1070, 1073 (Ala. Crim. App. 1981) (holding that a defendant was properly sentenced for violating § 32-8-12 in connection with a criminal charge for fraudulently having a lienholder removed from a title).  Similarly, under § 32-8-11, a person is guilty of aiding and abetting a violation of § 32-8-13(4), which makes it a crime for someone to knowingly and willfully commit a fraud in any application for a title or registration.

---

[4] According to the record, Detective Nelson charged Smith with the theft of $2,273.81 in U.S. currency, which apparently was the outstanding balance of Smith's loan with Acceptance.  In reality, Smith did not steal $2,273.81 from Acceptance, or anyone else.  Instead, the charged conduct, among other things, deprived Acceptance of the ability to use its lien/security interest in the Geo, and the original certificate of title, as a means of satisfying the $2,273.81 debt.

Additionally, it is a crime in Alabama to make a false report to law enforcement officials under Alabama Code § 13A-10-9, and Smith's uncontested role in Holston's pawn of the Geo strongly suggests that her report to Detective Nelson about Holston's forgery was not an honest one.  Of course, this conduct also gives rise to criminal conspiracy under Alabama Code § 13A-4-3.

The summary judgment evidence, which Smith largely has not contested or addressed in her summary judgment response, shows that Detective Nelson had evidence that Smith was a knowing and willing participant in a scheme[5] whose purpose was to release Acceptance's security interest in the Geo and then use that now-unencumbered vehicle to obtain a new loan from an altogether different company using the Geo as collateral.  In an effort to create distance between her and the Geo, on paper, the scheme further involved conveying the Geo out of Smith's name in Alabama and then pawning the unencumbered title in a different state under the name of a different person. In effect, this process deprived Acceptance of the ability to use (seize or repossess) the Geo to satisfy Smith's debt and arguably

---

[5] It is not uncommon for people to enter the arena of criminal malfeasance by failing to disclose past title encumbrances.  *See, e.g., State v. Young*, 711 A.2d 134, 136 (man convicted of intentionally failing to disclose encumbrances on a parcel of land); *People v. Jory*, 505 N.W.2d 228, 236 (1993) (overturning conviction for lack of intent but noting that it is a crime to purposely fail to disclose the existence of an encumbrance.);  *U.S. v. Boliaux*, 915 F.3d 493 (7th Cir. 2019) (describing scheme where defendant lied to obtain a duplicate certificate of title for cars he knew were financed by one lender, and used the duplicate titles to obtain additional financing from a second lender, thereby compromising the security interests of and cheating both lenders); *Marshall v. U.S.*, No. 3:17-cv-573-FDW, 2018 WL 443001 (W.D.N.C. Jan. 16, 2018).

allowed Holston and Smith to obtain additional moneys from a Georgia company that they otherwise could not have obtained. Detective Nelson perceived this scheme as constituting a theft of property (funds) from Acceptance because it essentially stole Acceptance's ability to use the Geo (lien) as a means of satisfying its debt.

In addition, Detective Nelson had evidence that Holston forged Smith's name on a bill of sale and certificate of title.  Indeed, Smith alleged as much to Detective Nelson.  Then, according to the evidence obtained by Detective Nelson, only a few weeks later, Smith accompanied Holston to a Georgia title pawn company and knowingly witnessed Holston pawn the title to a vehicle that Smith had previously claimed was fraudulently obtained by Holston, all for the purpose of obtaining money from the Georgia company.[6]

While not charged with such conduct, the City Defendants point out that these facts expose Smith to criminal claims associated with the fraudulent release of a security interest, forging a signature on a certificate of title, committing fraud in an application for title and registration, and knowingly (aiding and abetting) participating in efforts to use a fraudulently procured, unencumbered title for the purpose of obtaining money.

---

[6] In her affidavit, the TitleMax representative stated that she would not have entered into the pawn agreement with Holston had she known about the Acceptance loan or Smith's previous allegations to the local authorities that her signature on the application for title and bill of sale were forgeries. (Doc. 47-1 at 5.)

In her summary judgment response, Smith does not dispute the key facts. In fact, she largely ignores them. That is, she does not dispute that Acceptance had possession of the original certificate of title, that she never paid off the Acceptance debt, that she applied for a replacement title for the Geo that did not reflect the Acceptance lien, that someone purportedly signed (or forged) her name on a bill of sale and the replacement certificate of title, that she told Detective Nelson that her signature was forged by her *ex*-boyfriend, that she and Holston, within weeks of her conversation with Detective Nelson, entered a title pawn company in Georgia and pawned the title to the Geo, or that she received $50 for the transaction.

In her summary judgment responses, Smith completely ignores the facts surrounding her presence with Holston at the Georgia pawn transaction and the earlier claim to Detective Nelson that Holton had committed forgery. Her decision to ignore these facts not only renders them undisputed, but casts a large shadow over any assertion by Smith that there was otherwise no wrongdoing on her part.

Instead, Smith justifies her actions by arguing that the Acceptance debt was stale and unenforceable[7] because the Geo was over 12 years old. (*See* Doc. 48 at 7.)

---

[7] Smith claims that because her credit report showed that Acceptance had written, or charged, off the debt, the debt was not enforceable against her. (Doc. 41 at 7.) An internally charged-off debt does not mean a debt is unenforceable against the debtor. *See, e.g., In re Rodriguez*, 555 B.R. 871, 875 (Bankr. S.D. Fla. 2016) (citing *In re Diaconx Corp.*, 69 B.R. 333 (Bankr. E.D. Pa. 1987), for the proposition that the "unilateral action of a bank's accounting department in writing off a debt as uncollectible internally on its books" did not preclude enforcement of the obligation)). *See also Ramirez v. Palisades Collection LLC*, No. 7-C-3840, 2008 WL 2512679, at *1 (N.D. Ill. June 23,

Whether true or not,[8] for arguable probable cause purposes, the record remains uncontested as to the key facts that, as already stated, support arguable probable cause.  Indeed, even in the light most favorable to Smith, these facts supported a reasonable belief that there was a scheme[9] to cheat Acceptance out of its lien and its ability to use the Geo as a means of satisfying Smith's debt, as well as to fraudulently obtain loan funds from TitleMax using a vehicle that was actually encumbered.  As Detective Nelson's testimony made clear, Smith's actions are not consistent with someone who truly believed she had been the victim of a fraud perpetrated by an ex-boyfriend.  Simply put, the tangled web spun by the undisputed facts supported arguable probable cause for the arrest of Smith.

---

2008) (describing a company that purchases charged off credit card debt and enforces that debt against consumers, because charged off debt is still legally collectable).

[8] Whether stale or not, such a legal conclusion does not lessen the criminality of a forgery of a certificate of title or security interest release or a false report to the policing authorities.  *See Rice v. State*, 117 So. 502, 503 (Ala. App. 1928) (holding that it was permissible for the state of Alabama to bring a criminal case for forgery based on the testimony of a party that the signature appearing on the document was not theirs).  Nor does it explain or lend legitimacy to Smith's statements to Detective Nelson that the purported conveyance from Smith to Holston was fraudulent because Smith's signature was forged on a bill of sale and certificate of title by her ex-boyfriend; yet within weeks, Smith and Holston, unbeknownst to Detective Nelson, entered a title pawn company in Georgia where Holston used the fraudulently obtained title to obtain a loan against the title.

[9] That some of the acts occurred in Georgia is without legal consequence.  As the Eleventh Circuit recently noted, *see Everette v. Cobb County, GA*, 2020 WL 4917581, at *4 (11th Cir. Aug. 21, 2020),  it has long been understood that a state's constitutional authority encompasses punishment for crimes committed out of the state that were intended to produce harm within the state.  There is no doubt that the harm associated with pawning the Geo in Georgia was intended to affect Acceptance in Alabama.

Having found that arguable probable cause exists, the Court then moves to the other element of the qualified immunity test, which is easily satisfied: that Detective Nelson and Chief Parrish were operating within the scope of their employment duties. *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1267 (11th Cir. 2010) (holding that "investigating and prosecuting violations of the law "clearly fall[s] within the scope of official duties of a law enforcement officer"). The record shows that Chief Parrish was acting in his capacity, at all times relevant to the Complaint, as the Chief of the City Police Department by supervising Detective Nelson. *See, e.g., Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2019) (holding that a police sergeant was at all times acting within the scope of her discretionary authority in the supervision of officers). In this endeavor, the Court need go no further than consider the fact that Detective Nelson was investigating criminal activity that Smith, herself, reported. (*See* Doc. 47-30 at 7.)

Because both Detective Nelson and Chief Parrish are entitled to qualified immunity, neither they nor the City are liable for allegedly violating Smith's constitutional rights against unlawful search and seizure. Because this is the predicate for the first three counts of Smith's Complaint, they are each entitled to summary judgment.

> b. <u>Smith's malicious prosecution claims are also defeated by arguable probable cause.</u>

18

Smith alleges malicious prosecution (Counts Three and Four) under both federal and state law.  Both claims fail, once again, because Detective Nelson had arguable probable cause to arrest Smith for a crime as elucidated above.

First, to establish a federal claim for malicious prosecution under §1983, a plaintiff must prove (1) the elements of the common-law tort of malicious prosecution and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures.  *See Blue v. Lopez*, 901 F.3d 1352, 1357 (11th Cir. 2018).  As established above, the second element here, a violation of Smith's Fourth Amendment rights, did not occur because Detective Nelson had arguable probable cause.  Thus, the federal malicious prosecution claim fails.

Second, Alabama courts have recognized that state law malicious prosecution claims are disfavored because "[p]ublic policy requires that all persons shall resort freely to the courts for redress of wrongs and to enforce their rights, and that this may be done without the peril of a suit for damages in the event of an unfavorable judgment by jury or judge."  *Ex parte Harris*, 216 So. 3d 1201, 1214 (Ala. 2016).

In *Grider v. City of Auburn, Ala.*, the Eleventh Circuit established that, as it is for federal malicious prosecution claims, Alabama state malicious prosecution claims can be defeated by arguable probable cause.  618 F.3d 1240, 1259 (11th Cir. 2010)(holding that a police officer was not entitled to state-agent immunity or discretionary-function immunity under Alabama law because the plaintiff's version

of events showed an absence of arguable probable cause).  As previously discussed, Detective Nelson had arguable probable cause because probable cause existed to arrest Smith for some crime, even if it was not the crime charged by Detective Nelson.  Thus, the finding of "no probable cause" by the state court judge is largely irrelevant to the Court's analysis.

With arguable probable cause, Detective Nelson and Chief Parrish receive statutory, discretionary-function immunity under Alabama Code § 6-5-338(a), which provides immunity from tort liability arising out of conduct occurring during the performance of any discretionary function.  *See Telfare v. City of Huntsville*, 841 So. 2d 1222, 7227 (Ala. 2002).  Because arguable probable cause exists here, this immunity activated to Detective Nelson's and Chief Parrish's benefit and precludes the state law malicious prosecution claim from going any further.  *See Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003) (holding that a malicious prosecution claim is defeated by the absence of a constitutional violation and thereby the presence of qualified immunity).

Finally, with regard to the municipal liability of the City, the Alabama Supreme Court has held that "a municipality is not responsible for the acts of its officers, agents, or servants in making false arrests or for instituting a malicious prosecution." *See Dickinson v. City of Huntsville*, 822 So. 2d 411 (Ala. 2011); *Ott v. Everett*, 420 So. 2d 258 (Ala. 1982).  *See also Neighbors v. City of Birmingham*, 384

So. 2d 113 (Ala. 1980).  Thus, both malicious prosecution claims fail against the City for the additional reason that the City cannot be held liable for any malicious prosecution committed by Detective Nelson, even if one assumes that arguable probable cause did not exist.

### 2.  Smith has not Shown a Genuine Dispute of Material Fact as to Acceptance's Malfeasance.

All claims lodged against Acceptance rely on the same factual core; that is, Acceptance falsely represented (orally, in writing, and negligently) "to Defendant Nelson that Plaintiff had engaged in forgery to delete Acceptance's name as lien holders on the title to Plaintiff's vehicle."  (Doc. 1, at 11, 12, 13.)  It is this act, alleges Smith, that exposes Acceptance to liability for slander (Count Five), libel (Count Six), and negligence (Count Seven).  Acceptance is entitled to summary judgment as to all three claims.

Smith presents no evidence, not even a scintilla, to suggest that such a representation or statement was ever made by Acceptance, whether in writing, orally, or otherwise.  Even Smith's own affidavit does not offer any support for this allegation.  (*See generally* Doc. 42-1.)  Such a failure at the summary judgment stage, especially given the pleading requirements for such claims, proves fatal to any claims based upon such an alleged representation, statement or communication by Acceptance to Detective Nelson.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

257 (1986) (holding that a "plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."); *Chambliss v. Buckner*, 804 F. Supp. 2d 1240, 1248 (M.D. Ala. 2011) (holding that allegations in an unsworn complaint are not evidence for the purpose of summary judgment).

Apparently aware that she cannot support Counts Five, Six and Seven, as pleaded, with any evidence, Smith changes direction and introduces new theories for libel and slander in her summary judgment response.[10]  For example, Smith now claims that Acceptance committed libel, slander, and a negligent act when it told Detective Nelson that it held title to the Geo because, according to Smith, the lien was no longer valid or legally enforceable due to the passage of time.  (*See* Doc. 41 at 7-8.)  This new theory fails for several reasons.

First, this claim was not pled in the Complaint and therefore it cannot be injected into this case at such a late date.  *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that new claims may not be asserted at the summary judgment stage of litigation and must instead be included in an amended complaint).  It is axiomatic that a plaintiff cannot augment her complaint with allegations made for the first time in response to a summary judgment motion.

---

[10] Smith also vaguely references alleged violations of her privacy, violations of the Fair Credit Reporting Act, and a breach of the duty not to use criminal process to collect a civil debt.  (Doc. 41 at 10.)  Smith, however, never asserted such claims in her Complaint and therefore these newly articulated, but vaguely referenced, theories will be ignored.

*See Mahgoub v. Miami Dade Cmty. Coll.*, No. 05-11520, 2006 WL 952278, at *2 (11th Cir. Apr. 13, 2006).

Second, Smith has presented no evidence that Acceptance made any false statement or representation.  Instead, the record shows that, in response to a request by Detective Nelson, Acceptance stated that it still held the title and provided him with the original certificate of title and a copy of the note/security agreement.  There is no contention that these are fraudulent documents.   And that Acceptance physically held possession of the title was, in fact, a true statement. *See Foley v. State Farm Fire & Cas. Ins. Co.*, 491 So. 2d 934, 937 (Ala. 1986) (holding that truth is an absolute defense to defamation).

Third, any such statement, assuming such was made to Detective Nelson, was made on a qualified occasion since it was information provided to law enforcement as part of a law enforcement investigation, and Smith has not shown that it was accompanied by malice.  *See Butler v. Town of Argo*, 871 So. 2d 1, 26 (Ala. 2003); *Tidwell v. Winn-Dixie, Inc.*, 502 So. 2d 747, 748 (Ala. 1987).  Such law enforcement-related communications are subject to a qualified privilege.  *See id.* (holding that a store manager's report to police could not serve as the basis for a defamation claim because it was prompted by the duty of the store manager and therefore protected by conditional privilege).

As Smith has not presented any evidence supporting the complaint allegation that Acceptance accused her of forgery, Acceptance's motion for summary judgment is due to be granted.  Her belated attempts to redefine these claims cannot, and will not, be permitted.  Consequently, Acceptance's motion to strike (Doc. 43) is denied as moot.

## **CONCLUSION**

Based on the foregoing reasons, it be and is hereby

**ORDERED** as follows:

(1) the Motions for Summary Judgment (Docs. 37, 46) be and are hereby

**GRANTED** and this case be dismissed with prejudice; and

(2) the Motion to Strike filed by Acceptance (Doc. 43) is **DENIED** as moot.

**DONE** and **ORDERED** this 30th day of December, 2020.

_____/s/ R. Austin Huffaker, Jr.___
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE